**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


James Farmer, et al.,

      Plaintiffs,

-V-                               **Case No. 2:05-cv-0664**
                                          **JUDGE SMITH**
                                          **Magistrate Judge King**

Pike County Agricultural Society, et al.,

      Defendants.


### OPINION AND ORDER

Plaintiffs assert claims under 42 U.S.C. § 1983 and state law, alleging that defendants violated their due process rights by banning them from participating or assisting in livestock exhibitions at the Pike County Fair.  Plaintiffs move for a temporary restraining order ("TRO")(or preliminary injunction). For the reasons that follow the Court denies plaintiffs' motion.


### I.  Background

Plaintiffs are individual citizens of Ohio.  Plaintiff James Farmer is the father of plaintiffs Terri Farmer and Brooke

Farmer Walls.  Defendant Pike County Agricultural Society ("Society") is an agricultural society organized pursuant to Ohio Rev. Code Chapter 1711.  The individual defendants are members of the Society's Board.

On August 1, 2002, plaintiff Terri Farmer participated in the Pike County Fair by entering a steer in the livestock competition.  Terri Farmers steer was selected as the Reserve Market Champion.

Following the competition, urine and hair samples were taken from the steer and were tested at the Ohio State University College of Veterinary Medicine by an employee of the Ohio Department of Agriculture ("ODA")  The tests revealed the presence of the drug Lasix in the steer.  Lasix, or furosemide, is a diuretic which, when given to an animal, reduces the amount of water in the animal's body.  With less water retention, the animal's muscle tissue feels firmer to the judge.  Ohio Rev. Code § 901.76 makes it unlawful to tamper with livestock.  It specifically prohibits the use of diuretics for cosmetic purposes. Ohio Rev. Code § 901.76(E)(1)(f).

The ODA conducted a hearing on March 26, 2003.  At the hearing, Terry Farmer asserted that she did not treat the steer with Lasix, and that if Lasix was found in the steer it was the

2

result of third-party tampering.  Ms. Farmer testified that the steer was within her care and control throughout the fair, but that she and her family left the steer unattended for extended periods of time.  Ms. Farmer maintained that her uncle, Brian Farmer, had made unspecified threats against her father, James Farmer, and that Brian Farmer had said that he was going to the Pike County Fair.  An internal ODA memorandum indicated that Brian Farmer had approached the Pike County Fair board with a letter of protest alleging that the subject steer had not been in possession of the "owner" for the required period of time because the animal had been moved back and forth from Iowa. The protest was dropped, however, because Brian Farmer refused to pay the $100 complaint fee.

The ODA hearing officer issued his findings of fact, conclusions of law and recommendation on August 1, 2003. Based on the expert testimony offered at the hearing, the ODA found that Lasix had been administered to the subject steer.  The ODA rejected Terri Farmer's suggestion that her uncle Brian Farmer sabotaged the steer.  The ODA concluded, however, that the evidence submitted at the hearing was insufficient to prove by a preponderance of the evidence that Terry Farmer was the person who tampered with her steer in violation of Ohio Rev.

Code § 901.76.  Nonetheless, the ODA found that Ms. Farmer

violated Ohio Admin. Code 901-19-04, which provides in

relevant part:

> No person shall:
> (A) Administer or cause or permit to be administered a prescription drug to livestock either immediately before an exhibition or during an exhibition unless the prescription drug is administered:
> (1) By or under the supervision and direction of a veterinarian; and,
> (2) Only in accordance with label directions; and,
> (3) In conjunction with a valid veterinarian-client-patient relationship; and,
> (4) For a valid medical purpose; and,
> (5) A drug use notification form is completed and filed in accordance with the applicable requirements of rule 901-19-06 of the Administrative Code.
> . . . .
> (D) Show, sell, or offer for sale any livestock which contains an unlawful substance or has been subjected to unacceptable practices.
> . . . .
> (H) Make a false statement on a drug use notification form.

Ohio Admin. Code 901-19-06(A),(D), and (H).  The ODA

further found that Ms. Farmer violated Ohio Admin. Code 901-

19-06, which provides in relevant part:

> (A) The exhibitor and the owner of an animal are jointly and severally responsible for completing and filing the drug use notification form in the manner required by this rule.
> . . . .
> (H) No person shall submit an incomplete, illegible or unsigned drug use notification form.

Ohio Admin. Code 901-19-06(A), (H).  The ODA reasoned, in

4

essence, that Terri Farmer had custody and control over the steer, and was therefore responsible for preventing others from administering Lasix to it.  The ODA recommended that Terri Farmer be disqualified and required to return her prizes and proceeds.  The ODA notified the Society of its findings.

On July 7, 2004, the Society sent Terri Farmer a letter which stated in part as follows:

> This is to notify you that the Pike County Agricultural Society has ruled that your 2002 market steer has been disqualified from the Reserve Market Steer award and the proceeds from the sale of your 2002 market steers has been returned to the buyers.
> In addition, you and three members of your family will be banned from participating or assisting anyone who is participating in any junior or open shows held at the Pike County Fairgrounds for each of your lifetimes.  You may appeal this prohibition to the Pike County Agricultural Society after three years from the date of this letter, if you so choose.

Plaintiffs filed the instant lawsuit on July 6, 2005.

Terri Farmer and Brooke Farmer Walls apparently do not seek to participate in the upcoming 2005 Pike County Fair. Plaintiff James Farmer's fourteen-year-old  stepson, Colton W. Weiss, intends to enter an animal in the livestock competition at the Fair.  James Farmer wants to assist his stepson.  The animal Colton plans to enter is being kept on the property of Colton's biological father, David Weiss, and David Weiss has indicated that he will assist Colton with the animal.  Defendants represent

that they would allow Colton to seek the assistance of anyone

other than James Farmer.  James Farmer seeks a TRO requiring

defendants to allow him to assist his stepson Colton at the 2005

Pike County Fair.


## II.  Standard of Review

The Court considers four factors in determining whether to

issue a TRO or preliminary injunction:

> 1) whether the movant has a strong likelihood of
> success on the merits; (2) whether the movant would
> suffer irreparable injury without the injunction; (3)
> whether issuance of the injunction would cause
> substantial harm to others; and (4) whether the public
> interest would be served by issuance of the injunction.

Chabad of S. Ohio & Congregation Lubavitch v.City of

Cincinnati, 363 F.3d 427, 432 (6th Cir. 2004).  The factors are

not prerequisites; rather, they must be balanced.  Capobianco,

D.C. v. Summers, 377 F.3d 559, 561 (6th Cir. 2004).


## III.  Discussion

### A.  Likelihood of success on the merits

Plaintiffs bring their claim under 42 U.S.C. § 1983, arguing

that defendants violated their rights to procedural and

substantive due process guaranteed by the Fourteenth

Amendment of the U.S. Constitution by banning plaintiffs for

life.

> Section 1983 provides in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir.1995) (internal quotation marks and citation omitted).

### 1. Deprivation of constitutional right

#### a. Procedural due process

The Fourteenth amendment provides in part that a State may not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amen. XIV Sec 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. See, e.g., Thompson v. Ashe, 250 F.3d 399, 407 (6th Cir.2001). "[T]hree

inquiries must be made to determine whether, in a § 1983 action, a procedural due process violation has been established. They are: (1) whether the claimant has established a life, liberty or property interest protected by the Due Process Clause; (2) whether that interest was 'deprived' within the meaning of the Due Process Clause; and (3) whether adequate procedures were afforded prior to the deprivation of the protected interest.'' Franklin v. Aycock, 795 F.2d 1253, 1261-62 (6th Cir.1986). Thus, to prevail on its procedural due process claim, the plaintiffs must prove that they had a definite liberty or property interest and that such interest was abridged without appropriate process. See Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

''[T]he range of interests protected by procedural due process is not infinite," Id. at 570. In defining a liberty interest, the Supreme Court has stated:

> In an attempt to limit and guide interpretation of the [Due Process] Clause, we have insisted not merely that the interest denominated as a "liberty" be "fundamental" ... but also that it be an interest traditionally protected by our society. As we have put it, the Due Process Clause affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental."

Michael H. v. Gerald D., 491 U.S. 110, 122 (1989) (plurality opinion) (footnote omitted) (quoting Snyder v. Massachusetts,

291 U.S. 97, 105 (1934), overruled on other grounds, <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968), <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964)).  Stated otherwise, the  Due Process Clause of the Fourteenth Amendment does not protect against every perceived unfairness visited upon a person by the state.  For example, defamation alone is not enough to invoke due process concerns. <u>Paul v. Davis</u>, 424 U.S. 693, 711 (1976).

Here, the ban in question precludes James Farmer, Terri Farmer and Brooke Farmer Walls from "participating or assisting anyone who is participating in any junior or open shows held at the Pike County Fairgrounds."  The ban does not prevent plaintiffs from attending the Pike County Fair.  The ban does not include Colton Weiss.  It appears that neither Terri Farmer nor Brooke Farmer Walls intend to participate in any junior or open shows at the 2005 Pike County Fair.  Thus, the immediate concern for purposes of plaintiffs' TRO motion is James Farmer's desire to assist his Colton, who intends to exhibit an animal at the upcoming Fair.  James Farmer does not seek to enter his own animal in a competition.  Rather, he wants only to assist his stepson, Colton.  The animal Colton intends to enter in competition has been kept at the property of Colton's biological father, David Weiss. Colton's father intends to assist

Colton at the Fair.  Defendants represent that they would allow anyone other than James Farmer to assist Colton at the Fair.

Plaintiffs rely on <u>Carey v. Piphus</u>, 435 U.S. 247 (1978) for the proposition that their interests are protected by due process. <u>Carey</u> involved suspension from public school without due process.  This Court, however, does not equate the right to attend public school with James Farmer's desire to assist his stepson in a livestock competition.  Furthermore, it is not as though no process occurred.  A hearing was held before the ODA.  Although James Farmer was not a party to that proceeding, he attended the hearing and his interests were arguably adequately represented there through his daughter, Terri Farmer.  Terri Farmer, represented by counsel presumably retained by James Farmer, asserted the defense of third-party sabotage at the hearing. The Court finds that in these circumstances, it seems unlikely that James Farmer's interest in assisting Colton at the 2005 Pike County Fair rises to the level of a liberty interest protected by procedural due process.

At the very least, in the absence of authority indicating such protection, the Court cannot say that James Farmer has demonstrated a substantial likelihood of success with respect to his procedural due process claim as it relates to the upcoming

2005 Pike County Fair.

### b. Substantive due process

Substantive due process has been defined as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir.1992) (internal quotation marks and citation omitted). "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.' " Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir.1997). "[I]f any conceivable legitimate governmental interest supports the contested [law], that measure ... cannot offend substantive due process norms." 37712, Inc. v. Ohio Dep't of Liquor Control, 113 F.3d 614, 620 (6th Cir.1997).

Obviously, there is no specific constitutional guarantee of a right to assist one's stepson in a county fair livestock competition. The issue, then, is whether defendants action "shocks the conscience."

The ODA's decision is significant to the Court's analysis of

this issue, as defendants relied upon it when they banned plaintiffs.  As plaintiffs point out, the ODA found that there was insufficient evidence to conclude that Terri Farmer administered the Lasix to the subject steer.  Nonetheless, the ODA specifically rejected Terri Farmer's sabotage theory.  Given these finding, the question becomes, who administered the Lasix to the steer?  In these circumstances it was not irrational for defendants to have at least suspected James Farmer as someone with both the motive and opportunity to treat the steer with Lasix.  And even if defendants did not suspect James Farmer of administering the Lasix, it would not have been completely irrational for defendants to hold him jointly responsible with his then minor daughter for failing to prevent Lasix from being given to the animal.[1]  Moreover, as noted above, James Farmer's interests were afforded some protection at the ODA hearing through his daughter.  The Court cannot say that defendants' action to protect the integrity of livestock competitions shocks the conscience.

---

[1] The Ohio Administrative Code states, "if the exhibitor or the owner was a minor child at the time the unlawful substance or unacceptable practice was detected, the parent or guardian of the person shall also be absolutely liable to discipline…." **Ohio Admin. Code 901-19-19.**

12

## 2. State action

To prevail on a federal civil rights claim under § 1983, a plaintiff must show that he was deprived of a constitutional right "under color of state law." Parratt v. Taylor, 451 U.S. 527, 535 (1981). The Sixth Circuit Court of Appeals recognizes three tests to determine whether there was state action in a particular case: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. Chapman v. Higbee Company, 256 F.3d 416, 425 (6th Cir. 2001).

The public function test inquires whether the defendant has exercised powers traditionally exclusively reserved to the state. Id. Such powers have been interpreted narrowly, and only functions such as holding elections, exercising eminent domain, and operating a company-held town fall under this category. Id.

The state compulsion test requires that a state "'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" Lansing v. City of Memphis, 202 F.3d 821, 829 (6th Cir. 2000)(quoting Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992)).

Under the nexus test, "'the action of a private party constitutes state action when there is  a sufficiently close nexus

between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" Id. at 830 (quoting Wolotsky, 960 F.2d at 1335)).  No clear standard has emerged to identify a "sufficiently close nexus."  Id.  Several factors, however, have been deemed insufficient to establish the required nexus. Id.  For example, the mere presence of state regulation, even if extensive, does not, by itself, justify a finding of a close nexus. Id.  Likewise, public funding or the private use of public property does not satisfy the test. Id.  Similarly, the presence of a minority of public officials on the board of a private entity does not render the entity a state actor; neither does the state's acquiescence or approval of a private activity render it a state action.  Id. at 831.  Lastly, a private  actor's use of public services does not convert the action into one by the state. Id.

One Ohio appellate court has found a state action for purposes of § 1983 where a county agricultural society had a candidate for the Ohio House of Representatives arrested and ejected from a fair distributing literature outside of his exhibition booth.  Yiamouyiannis v. Lowe, Case No. 96CAE-05-024, 1997 WL 5281, at * 2 (Ohio App. 5th Dist. Jan. 3, 1997).  The court in Yiamouyiannis reasoned:

> The appellee Society is a creature of Ohio statutes.
> See: R.C. Chapter 1711. et seq. See also: Lowe Depo.
> at 130. Pursuant to these statutes, the record reflects
> appellees received approximately $42,000 from
> Delaware County and the State for the Delaware
> County Fair. (Lowe Depo. at 134). In addition,
> appellees receive the benefit of rent-free use of County
> land as the fairgrounds and the State pays for the
> insurance on the buildings located on said land. (Lowe
> Depo. at 144). In light of the above, we find there is
> sufficient state action in the instant case to support a
> claim under 42 U.S.C. Section 1983.

Id. at * 2.  The court in Yiamouyiannis relied on a decision by

this Court which stated, in dicta[2], that the Ohio Exposition

Commission was a state actor for purposes of § 1983.  See Int'l

Soc. for Krishna Consciousness v. Evans, 440 F. Supp. 414, 419

(S.D. Ohio 1977).  A federal district court in Indiana held that a

county agricultural society was a state actor.  That decision,

however, was vacated and remanded.  Int'l Soc. for Krishna

Concoiusness, Inc. v. Lake County Agr. Soc., 521 F. Supp 8, 12

(N.D. Ind. 1980), vacated and remanded, 703 F.2d 571 (7th Cir.

1983).

Yiamouyiannis was decided after discovery and the filing

of a summary judgment motion. Unlike Yiamouyiannis, in the

instant case the record is not developed and does not contain

facts from which the required nexus can be inferred.  That the

State of Ohio regulates or funds the county agricultural societies

---

[2] The defendant in Evans conceded it was operating under color of state law.

15

is insufficient to establish that nexus.  <u>Lancing</u>, 202 F.3d at 830.
For this additional reason, the Court finds that plaintiffs have
failed to demonstrate a substantial likelihood of success on the
merits at this juncture.

### B.  Irreparable harm

Given that plaintiffs have not substantially demonstrated a
constitutional violation, the Court is unable to conclude that
irreparable harm has been established for purposes of issuing a
TRO.

### C. Harm to others

James Farmer's stepson Colton Weiss will not be harmed in
the absence of injunctive relief because Colton's father David
Weiss will assist him at the Fair.  In addition, defendants will
allow anyone other than James Farmer to assist Colton with the
animal.

### D.  Public interest

The Court finds that in this case the public interest is best
served by deferring to defendants' efforts to ensure the integrity
of its livestock competitions.

Examining the four factors together, the Court concludes that the issuance of a TRO is not warranted in this instance.

## IV.  Disposition

For the above reasons, the Court **DENIES** plaintiff's motion for a TRO.


**IT IS SO ORDERED.**


 **/s/ George C. Smith**_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**