**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

James Farmer, et al.,

      Plaintiffs,

-V-                                          Case No. 2:05-cv-0664
                                                  JUDGE SMITH
                                                    Magistrate Judge King

Pike County Agricultural Society, et al.,

      Defendants.


**ORDER**

    Plaintiffs assert claims under 42 U.S.C. § 1983 and state law, alleging that defendants violated their due process rights by banning them from participating or assisting in livestock exhibitions at the Pike County Fair. Defendants move for summary judgment (Doc. 27).  For the reasons that follow the Court grants defendants' summary judgment motion.


**I.  Background**

    Plaintiffs are individual citizens of Ohio.  Plaintiff James Farmer is the father of plaintiffs Terri Farmer and Brooke

Farmer Walls.  Defendant Pike County Agricultural Society ("Society") is an agricultural society organized pursuant to Ohio Rev. Code Chapter 1711.  The individual defendants are members of the Society's Board.

On August 1, 2002, plaintiff Terri Farmer participated in the Pike County Fair by entering a steer in the livestock competition.  Terri Farmer's steer was selected as the Reserve Market Champion.

Following the competition, urine and hair samples were taken from the steer and were tested at the Ohio State University College of Veterinary Medicine by an employee of the Ohio Department of Agriculture ("ODA").   The tests revealed the presence of the drug Lasix in the steer.  Lasix, or furosemide, is a diuretic which, when given to an animal, reduces the amount of water in the animal's body.  With less water retention, the animal's muscle tissue feels firmer to the judge.  Ohio Rev. Code § 901.76 makes it unlawful to tamper with livestock.  It specifically prohibits the use of diuretics for cosmetic purposes. Ohio Rev. Code § 901.76(E)(1)(f).

The ODA conducted a hearing on March 26, 2003.  At the hearing, Terri Farmer asserted that she did not treat the steer with Lasix, and that if Lasix was found in the steer it was the

2

result of third-party tampering.  Ms. Farmer testified that the steer was within her care and control throughout the fair, but that she and her family left the steer unattended for extended periods of time.  Ms. Farmer maintained that her uncle, Brian Farmer, had made unspecified threats against her father, James Farmer, and that Brian Farmer had said that he was going to the Pike County Fair.  An internal ODA memorandum indicated that Brian Farmer had approached the Pike County Fair board with a letter of protest alleging that the subject steer had not been in possession of the "owner" for the required period of time because the animal had been moved back and forth from Iowa. The protest was dropped, however, because Brian Farmer refused to pay the $100 complaint fee.

The ODA hearing officer issued his findings of fact, conclusions of law and recommendation on August 1, 2003. Based on the expert testimony offered at the hearing, the ODA found that Lasix had been administered to the subject steer.  The ODA rejected Terri Farmer's suggestion that her uncle Brian Farmer sabotaged the steer.  The ODA concluded, however, that the evidence submitted at the hearing was insufficient to prove by a preponderance of the evidence that Terri Farmer was the person who tampered with her steer in violation of Ohio Rev.

Code § 901.76.  Nonetheless, the ODA found that Ms. Farmer

violated Ohio Admin. Code 901-19-04, which provides in

relevant part:

> No person shall:
> (A) Administer or cause or permit to be administered a
> prescription drug to livestock either immediately
> before an exhibition or during an exhibition unless the
> prescription drug is administered:
> (1) By or under the supervision and direction of a
> veterinarian; and,
> (2) Only in accordance with label directions; and,
> (3) In conjunction with a valid
> veterinarian-client-patient relationship;
> and,
> (4) For a valid medical purpose; and,
> (5) A drug use notification form is completed and filed
> in accordance with the applicable requirements of rule
> 901-19-06 of the Administrative Code.
> . . . .
> (D) Show, sell, or offer for sale any livestock which
> contains an unlawful substance or has been subjected
> to unacceptable practices.
> . . . .
> (H) Make a false statement on a drug use notification
> form.

Ohio Admin. Code 901-19-06(A),(D), and (H).  The ODA

further found that Ms. Farmer violated Ohio Admin. Code 901-

19-06, which provides in relevant part:

> (A) The exhibitor and the owner of an animal are
> jointly and severally responsible for completing and
> filing the drug use notification form in the manner
> required by this rule.
> . . . .
> (H) No person shall submit an incomplete, illegible or
> unsigned drug use notification form.

Ohio Admin. Code 901-19-06(A), (H).  The ODA reasoned, in

4

essence, that Terri Farmer had custody and control over the steer, and was therefore responsible for preventing others from administering Lasix to it.  The ODA recommended that Terri Farmer be disqualified and required to return her prizes and proceeds.  The ODA notified the Society of its findings.

On July 7, 2004, the Society sent Terri Farmer a letter which stated in part as follows:

> This is to notify you that the Pike County Agricultural Society has ruled that your 2002 market steer has been disqualified from the Reserve Market Steer award and the proceeds from the sale of your 2002 market steers has been returned to the buyers.
> In addition, you and three members of your family will be banned from participating or assisting anyone who is participating in any junior or open shows held at the Pike County Fairgrounds for each of your lifetimes.  You may appeal this prohibition to the Pike County Agricultural Society after three years from the date of this letter, if you so choose.

Plaintiffs filed the instant lawsuit on July 6, 2005.  Upon filing this case, plaintiffs' moved for a temporary restraining order ("TRO") enjoining defendants from preventing plaintiffs from participating or assisting in the 2005 Pike County Fair.  The Court denied plaintiffs' TRO motion on July 27, 2005.

## II.  Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Id.  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or

unimpeached, if it comes from disinterested witnesses.  Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and Matsushita have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in Street identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  Id. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  Id. (quoting Liberty Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  Id. (quoting Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search

the entire record to establish that it is bereft of a genuine issue of material fact." Id. at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

### III. Discussion

Plaintiffs bring their claim under 42 U.S.C. § 1983, arguing that defendants violated their rights to procedural and substantive due process guaranteed by the Fourteenth Amendment of the U.S. Constitution by banning plaintiffs for life.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color

of state law." <u>Ellison v. Garbarino</u>, 48 F.3d 192, 194 (6th Cir.1995) (internal quotation marks and citation omitted).

### A.  Federal Due Process claims

#### 1.  Procedural due process

The Fourteenth Amendment provides in part that a State may not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amen. XIV Sec 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. <u>See</u>, <u>e.g.</u>, <u>Thompson v. Ashe</u>, 250 F.3d 399, 407 (6th Cir.2001).

"[T]hree inquiries must be made to determine whether, in a § 1983 action, a procedural due process violation has been established. They are: (1) whether the claimant has established a life, liberty or property interest protected by the Due Process Clause; (2) whether that interest was 'deprived' within the meaning of the Due Process Clause; and (3) whether adequate procedures were afforded prior to the deprivation of the protected interest." <u>Franklin v. Aycock</u>, 795 F.2d 1253, 1261-62 (6th Cir.1986).  Thus, to prevail on its procedural due process claim, the plaintiffs must prove that they had a definite liberty or

property interest and that such interest was abridged without
appropriate process. See Board of Regents v. Roth, 408 U.S.
564, 569-70 (1972).

"[T]he range of interests protected by procedural due
process is not infinite." Id. at 570. In defining a liberty interest,
the Supreme Court has stated:

> In an attempt to limit and guide interpretation of the
> [Due Process] Clause, we have insisted not merely that
> the interest denominated as a "liberty" be
> "fundamental" ... but also that it be an interest
> traditionally protected by our society. As we have put
> it, the Due Process Clause affords only those
> protections "so rooted in the traditions and conscience
> of our people as to be ranked as fundamental."

Michael H. v. Gerald D., 491 U.S. 110, 122 (1989) (plurality
opinion) (footnote omitted) (quoting Snyder v. Massachusetts,
291 U.S. 97, 105 (1934), overruled on other grounds, Duncan v.
Louisiana, 391 U.S. 145 (1968), Malloy v. Hogan, 378 U.S. 1
(1964)).  Stated otherwise, the  Due Process Clause of the
Fourteenth Amendment does not protect against every perceived
unfairness visited upon a person by the state.  For example,
defamation alone is not enough to invoke due process concerns.
Paul v. Davis, 424 U.S. 693, 711 (1976).

Here, the ban in question precludes James Farmer, Terri
Farmer and Brooke Farmer Walls from "participating or
assisting anyone who is participating in any junior or open

10

shows held at the Pike County Fairgrounds." The ban does not prevent plaintiffs from attending the Pike County Fair.

Plaintiffs rely on <u>Carey v. Piphus</u>, 435 U.S. 247 (1978) for the proposition that their interests are protected by due process. <u>Carey</u> involved suspension from public school without due process. This Court, however, does not equate the right to attend public school with plaintiffs' desire to participate and assist in livestock competitions at the Pike County Fair.

Furthermore, it is not as if no process occurred. Following notice, a hearing was held before the ODA. Although James Farmer was not a party to that hearing, his interests were arguably adequately represented there through his daughter, Terri Farmer. Terri Farmer, represented by counsel presumably retained by James Farmer, asserted the defense of third-party sabotage at the hearing. James Farmer attended the hearing with Terri Farmer.

For the above reasons, the Court finds that plaintiffs have not established a liberty interest protected by procedural due process. Furthermore, even if plaintiffs had established such an interest, their procedural due process claim would nonetheless fail because adequate due process was afforded at the hearing before the ODA. The Court therefore concludes that defendants

11

are entitled to summary judgment with respect to plaintiffs'
procedural due process claim.

## 2. Substantive due process

Substantive due process has been defined as "[t]he doctrine
that governmental deprivations of life, liberty or property are
subject to limitations regardless of the adequacy of the
procedures employed." <u>Pearson v. City of Grand Blanc</u>, 961
F.2d 1211, 1216 (6th Cir.1992) (internal quotation marks and
citation omitted). "Substantive due process claims may be
loosely divided into two categories: (1) deprivations of a
particular constitutional guarantee; and (2) actions that 'shock
the conscience.' " <u>Valot v. Southeast Local Sch. Dist. Bd. of
Educ.</u>, 107 F.3d 1220, 1228 (6th Cir.1997). "[I]f any
conceivable legitimate governmental interest supports the
contested [law], that measure ... cannot offend substantive due
process norms." <u>37712, Inc. v. Ohio Dep't of Liquor Control</u>,
113 F.3d 614, 620 (6th Cir.1997).

Obviously, there is no specific constitutional guarantee of a
right to participate or assist in a county fair livestock
competition.  The issue, then, is whether defendants action
''shocks the conscience.''

12

The ODA's decision is significant to the Court's analysis of this issue, as defendants relied upon it when they banned plaintiffs. As plaintiffs point out, the ODA found that there was insufficient evidence to conclude that Terri Farmer administered the Lasix to the subject steer. Nonetheless, the ODA specifically rejected Terri Farmer's sabotage theory. Given these findings, the question becomes, who administered the Lasix to the steer? In these circumstances it was not irrational for defendants to have at least suspected James Farmer as someone with both the motive and opportunity to treat the steer with Lasix. And even if defendants did not suspect James Farmer of administering the Lasix, it would not have been completely irrational for defendants to hold him jointly responsible along with his daughter for failing to prevent Lasix from being given to the animal. Moreover, as noted above, James Farmer's interests were afforded adequate protection at the ODA hearing through his daughter. The Court cannot say that defendants' action to protect the integrity of livestock competitions shocks the conscience. Defendants are therefore entitled to summary judgment with respect to plaintiffs' substantive due process claim.

### 3.  State action

To prevail on a federal civil rights claim under § 1983, a plaintiff must show that he was deprived of a constitutional right "under color of state law."  Parratt v. Taylor, 451 U.S. 527, 535 (1981).  The Sixth Circuit Court of Appeals recognizes three tests to determine whether there was state action in a particular case: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.  Chapman v. Higbee Company, 256 F.3d 416, 425 (6th Cir. 2001).

The public function test inquires whether the defendant has exercised powers traditionally exclusively reserved to the state. Id.  Such powers have been interpreted narrowly, and only functions such as holding elections, exercising eminent domain, and operating a company-held town fall under this category.  Id.

The state compulsion test requires that a state "'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'"  Lansing v. City of Memphis, 202 F.3d 821, 829 (6th Cir. 2000)(quoting Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992)).

Under the nexus test, "'the action of a private party constitutes state action when there is  a sufficiently close nexus

14

between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" Id. at 830 (quoting Wolotsky, 960 F.2d at 1335)).  No clear standard has emerged to identify a "sufficiently close nexus."  Id.  Several factors, however, have been deemed insufficient to establish the required nexus. Id.  For example, the mere presence of state regulation, even if extensive, does not, by itself, justify a finding of a close nexus. Id.  Likewise, public funding or the private use of public property does not satisfy the test. Id.  Similarly, the presence of a minority of public officials on the board of a private entity does not render the entity a state actor; neither does the state's acquiescence or approval of a private activity render it a state action.  Id. at 831.  Lastly, a private  actor's use of public services does not convert the action into one by the state. Id.

One Ohio appellate court has found a state action for purposes of § 1983 where a county agricultural society had a candidate for the Ohio House of Representatives arrested and ejected from a fair distributing literature outside of his exhibition booth.  Yiamouyiannis v.  Lowe, Case No. 96CAE-05-024, 1997 WL 5281, at * 2 (Ohio App. 5th Dist. Jan. 3, 1997).  The court in Yiamouyiannis reasoned:

> The appellee Society is a creature of Ohio statutes.
> See: R.C. Chapter 1711. et seq. See also: Lowe Depo.
> at 130. Pursuant to these statutes, the record reflects
> appellees received approximately $42,000 from
> Delaware County and the State for the Delaware
> County Fair. (Lowe Depo. at 134). In addition,
> appellees receive the benefit of rent-free use of County
> land as the fairgrounds and the State pays for the
> insurance on the buildings located on said land. (Lowe
> Depo. at 144). In light of the above, we find there is
> sufficient state action in the instant case to support a
> claim under 42 U.S.C. Section 1983.

Id. at * 2.  The court in Yiamouyiannis relied on a decision by this Court which stated, in dicta[1], that the Ohio Exposition Commission was a state actor for purposes of § 1983.  See Int'l Soc. for Krishna Consciousness v. Evans, 440 F. Supp. 414, 419 (S.D. Ohio 1977).  A federal district court in Indiana held that a county agricultural society was a state actor.  That decision, however, was vacated and remanded.  Int'l Soc. for Krishna Concoiusness, Inc. v. Lake County Agr. Soc., 521 F. Supp 8, 12 (N.D. Ind. 1980), vacated and remanded, 703 F.2d 571 (7th Cir. 1983).

Yiamouyiannis was decided after discovery and the filing of a summary judgment motion. Unlike Yiamouyiannis, in the instant case the record is devoid of any evidence from which the required nexus can be inferred.  That the State of Ohio regulates or may fund county agricultural societies is, by itself,

[1] The defendant in Evans conceded it was operating under color of state law.

16

insufficient to establish that nexus.  <u>Lansing</u>, 202 F.3d at 830.
For this additional reason, the Court finds that plaintiffs' § 1983
claim fails as a matter of law.

### B.  State Law Claims

Having determined that plaintiffs' federal claims are
subject to dismissal, the Court declines to exercise supplemental
jurisdiction over plaintiffs' state law claims.  28 U.S.C. §
1367(c)(3).  The Court will therefore dismiss plaintiffs' state law
claims without prejudice.

### IV.  Disposition

For the above reasons, the Court **GRANT** defendants' motion
for summary judgment (Doc. 27).

The Clerk shall enter a final judgment, in favor of
defendants, and against plaintiffs, dismissing their federal claims
with prejudice, and their state law claims without prejudice.

The Clerk shall remove this case from the Court's pending
cases list.

The Clerk shall remove Doc. 27 from the Court's pending
CJRA motions list.

**IT IS SO ORDERED.**


                        **/s/ George C. Smith**

                        **GEORGE C. SMITH, JUDGE**
                        **UNITED STATES DISTRICT COURT**